CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
OCT 16 2006
JOHN P. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:06CR00033 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| NANCY LYNN STEWART, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with using the United States Postal Service to execute a scheme to defraud the United States Department of Health and Human Services in violation of Title 18, United States Code, Section 1341. On October 3, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Indictment pursuant to a plea agreement between defendant and the government.

At this hearing the defendant was placed under oath and testified that her full legal name is Nancy Lynn Stewart, that she was born on January 19, 1952, and that she graduated from college. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequence of pleading guilty. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. Defendant stated that she had no other physical or mental condition which impaired her ability to understand the nature of the proceedings being

held.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. She also testified that she had read the plea agreement in its entirety and had discussed the plea agreement with her counsel before signing the agreement. She stated that she understood the terms of the agreement and that the document presented to the court set forth her agreement with the government in its entirety. The defendant specifically testified that she understood that under the terms of the agreement she was waiving any right to appeal or to collaterally attack her conviction or sentence and that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing. Defendant also testified that she knew that the government had reserved the right to appeal any Sentencing Guidelines issues. Defendant's counsel stated that he had reviewed each of the terms of the plea agreement with the defendant and was satisfied that she understood those terms.

The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in her agreement with the government, or made any assurances or threats to her in an effort to induce her plea. The defendant testified that she understood that the offense with which she is charged is a felony and that, if her plea is accepted, she will be adjudged guilty of that offense. Moreover, the defendant testified that she understood that she will be required to pay a mandatory assessment of $100. The defendant stated that she understood that she must submit to the government a complete and truthful financial statement revealing all her assets and liabilities on a form provided by the government within 30 days of

2

the date of the plea agreement. The defendant also testified that she was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of her case. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated.

The defendant was informed that the maximum possible penalty provided by law for Count One is twenty years imprisonment and a $250,000 fine, together with supervised release and a special assessment of $100. The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the sentencing guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report had been prepared and both parties had been given an opportunity to challenge the reported facts and the application of the guidelines. She stated that she understood that the eventual sentence imposed may be different from any estimate her attorney has given her and that the court has the authority to issue a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is

pleading guilty.

The defendant stated she knew the government could prove that her conduct resulted in a financial loss of at least $5,000, but not more than $10,000. The defendant acknowledged that the following were appropriate: a Sentencing Guideline base level of 7, pursuant to USSG § 2B1.1(a); a Specific Offense Characteristics upward departure of two (2) levels, pursuant to USSG § 2B1.1; and an additional upward departure of two (2) points, pursuant to USSG § 3B1.1.3. The defendant stated she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a) for acceptance of responsibility, and if applicable, will recommend an additional one (1) level reduction for timely providing information and notifying the government of her intent to plead guilty. The defendant further stated she understood that any information she provides to the United States Probation Office will not be used to enhance her sentence under USSG § 1B1.8. The defendant was informed that the government agrees not to seek an upward departure and will not oppose her being sentenced at the lower end of the applicable sentencing guidelines range. The defendant was further informed that the government will object to any motion for downward departure that she might make. The defendant stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, she must provide such assistance in a manner set forth in the plea agreement. The defendant stated that she understood that a determination as to whether she had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant stated that she knew that parole

4

had been abolished and that if she is sentenced to prison she will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
6. The right to decline to testify unless she voluntarily elected to do so in her own defense;
7. The right to a unanimous guilty verdict;
8. The right to appeal a guilty verdict.

The defendant also testified that she understood that if she is adjudged guilty of the charges against her, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel. The defendant testified that she understood the possible consequences of her plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept her plea of guilty to Count One of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived her right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

If this matter were to go to trial, the United States of America would prove beyond a

5

reasonable doubt with admissible and relevant evidence the following:

During 2003, the defendant NANCY LYNN STEWART was an employee of AIDS Response Effort, Inc. (ARE). ARE is a non-profit service organization located in Winchester, Virginia, within the Western District of Virginia. ARE provides various services and educational programs to residents of the City of Winchester, Clarke County, Frederick County, Shenandoah County, Warren County and a portion of Page County. ARE received federal grant money from the United States Department of Health and Human Services, a department of the United States of America, to fund its activities. The federal funds were provided to and administered by the Virginia Department of Health.

In 2003, ARE established a program to identify individuals who were at a high risk of being infected with HIV/AIDS and/or individuals who were infected, but unaware of their infection. The program provided for the payment of bonuses and expenses to ARE employees for each completed Risk Assessment and saliva sample collected. The Risk Assessment had a series of questions that sought pertinent information regarding an individual's lifestyle. Individuals completing the Risk Assessment were required to sign a statement certifying the truth and accuracy of the information contained on the form. The individuals were also asked to provide a saliva sample to test for HIV/AIDs.

Salvia samples were collected using an OraSure Collection Device. After collection, the sample was sent to Richmond, Virginia, by private courier for testing. The test results were mailed to ARE in Winchester utilizing the United States Postal Service.

From June 1, 2003 and through December 31, 2003, the defendant, completed and submitted ninety-one Risk Assessments and saliva samples for testing. The demographics of

6

STEWART's alleged test subjects were extremely similar, gay black males between the ages of twenty and twenty-five years old and all intravenous drug user. Ninety per cent of STEWART's Risk Assessments contained similar names, signatures that appeared to be signed by the same person and vague answers to the Risk Assessment questions. These factors caused the ARE staff and supervisors to question the validity of STEWART's submissions.

When first confronted by her supervisor, STEWART stated that the reason she had such a high number Risk Assessments completed, when compared to her co-workers, was due to the fact that she had met a woman whose son had died of HIV. That woman had set up a weekend haven in her home for the gay community and STEWART was in contact with the members of that community. The supervisor asked STEWART for backup information, which the defendant agreed to provide the following Friday.

At the followup meeting, STEWART failed to provide the requested documentation, but acknowledged that she falsified ninety-one Risk Assessments and used her own saliva for the OraSure sample. STEWART was discharged and reimbursed ARE $7,018.14 for the bonus and expense money she falsely obtained. In order to reevaluate the program, ARE stopped testing for one month.

On November 18, 2005, STEWART was in interviewed by federal agents. She admitted to making up the information contained on ninety-one Risk Assessments and falsifying the signatures. She also admitted to swabbing her own mouth to obtain OraSure test samples. She further stated that she knew what she was doing was wrong, but felt her actions helped ARE retain its funding. There is no evidence that ARE was in danger of losing any of its funding.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of her plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment and adjudge her guilty of that offense. A sentencing hearing is scheduled for January 16, 2007 at 11:00 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with

instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

10-16-06
Date